**UNITED STATES of America**

**v.**

**Wendell PAYNE.**

**No. CR–1–93–78–01.**

United States District Court,
S.D. Ohio, W.D.

Jan. 13, 1994.

William J. Rapp, Cincinnati, OH, for defendant.

John DiPuccio, U.S. Atty., Cincinnati, OH, for the U.S.

## ORDER DENYING DEFENDANT'S MOTIONS

SPIEGEL, District Judge.

This matter is before the Court on the Defendant's motion for dismissal for lack of jurisdiction (doc. 25), the Government's Response (doc. 28), the Defendant's Motion for Dismissal on Double Jeopardy Grounds (doc. 29), the Defendant's Supplemental Memorandum (doc. 30), and the Government's Response (doc. 31).

After a two day jury trial, the Defendant, Wendell Payne, was found guilty of taking a motor vehicle from another person by force or violence while in possession of a firearm, in violation of 18 U.S.C. § 2119. This offense is commonly known as "carjacking." The Defendant was also convicted of using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

The Defendant has moved this Court to dismiss both counts claiming that Congress lacked authority under the commerce clause to enact § 2119. Thus, the argument goes, § 2119 is unconstitutional, and this court lacks jurisdiction over the Defendant. The Defendant further argues that Count 2 should also be dismissed on double jeopardy grounds. For the following reasons, we deny the Defendant's motions.

## I

### Constitutionality of § 2119

The Defendant claims that this Court lacks jurisdiction over this matter because Congress exceeded its authority under the commerce clause in enacting § 2119. We disagree.

Under the Commerce Clause of the United States Constitution, Congress has the authority to "regulate commerce with foreign nations and among the several states...." U.S. Const. art. I § 8 cl. 3. The federal courts have long interpreted congressional power under the Commerce Clause extremely broadly. See Perez v. United States, 402 U.S. 146, 151, 91 S.Ct. 1357, 1360, 28 L.Ed.2d 686 (1971); see, e.g., United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942) (upholding federal regulation on price of intrastate milk); Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (upholding federal regulation on wheat grown wholly for home consumption). Under the Commerce Clause a given endeavor need only have a de minimis effect on interstate commerce to provide Congress with the authority to regulate it. United States v. Esch, 832 F.2d 531, 540 (10th Cir.1987), cert. denied, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988); United States v. DeMet, 486 F.2d 816, 822 (7th Cir.1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); United States v. Eskridge, 818 F.Supp. 259, 261 (W.D.Wis. 1993).

Furthermore, with respect to whether some activity has an effect on inter-

state commerce, the relevant inquiry is whether the *aggregate* class of activities has at least a *de minimis* effect on commerce, not whether any single act in particular has in fact had an impact on interstate commerce. *Perez v. United States,* 402 U.S. 146, 152–154, 91 S.Ct. 1357, 1360–61, 28 L.Ed.2d 686 (1971). Thus, as Professor Tribe noted, it is "well established that Congress has the power to regulate not only acts which taken *alone* would have a substantial effect on interstate commerce . . . but also on acts which might reasonably be deemed nationally significant in their *aggregate* economic effect; the triviality of an *individual* act's impact is irrelevant so long as the *class* of such acts might reasonably be deemed to have substantial national consequences." Laurence H. Tribe, American Constitutional Law § 5–5 at 237 (1978).

■ In light of this very broad interpretation of Congressional power under the commerce clause, it has been consistently held that if congress has *any* rational basis for finding that a regulated activity effects interstate commerce, or if there is *any* rational connection between the regulatory means selected and the asserted ends, the court must uphold the statute. *Hodel v. Indiana,* 452 U.S. 314, 324–325, 101 S.Ct. 2376, 2383–84, 69 L.Ed.2d 40 (1981); *Atlanta Motel v. United States,* 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964); *United States v. Stillwell,* 900 F.2d 1104, 1111 (7th Cir.1990), *cert. denied,* 498 U.S. 838, 111 S.Ct. 111, 112 L.Ed.2d 81 (1990); *United States v. Stith,* 824 F.Supp. 128, 129 (S.D.Ohio 1993) (Beckwith, J.). In this case, congress has made express findings—which this Court finds to be, at minimum, rational—that carjacking has an effect on interstate commerce.

For example, the House Judiciary Committee found that,

[a]uto theft has become a very large and lucrative business. The typical auto theft is no longer a teenager seeking a joy-ride. Now, auto theft is an industry peopled by professional criminals operating as part of profit-making enterprises.

\*    \*    \*    \*    \*    \*

[A]utomobile thieves turn stolen cars into money in three ways. The most common is to bring a car to a "chop shop," where it is dismantled and sold as replacement parts. Because a car's parts can be worth up to four times the value of the car, these shops generate enormous profits. Some repair shops unscrupulously fuel this illicit business by maintaining a willful ignorance about the source of the used parts they purchase.

A second technique for fencing stolen automobiles is to obtain an apparently valid, or "washed" title for the car, and then sell the car to an unsuspecting buyer. To acquire washed titles, thieves exploit a loophole in state motor vehicle titling systems: a state's inability to communicate quickly with other states.

The third, increasingly common, alternative for stolen car rings is to export the vehicle by ship for sale abroad. Virtually all goods shipped overseas are now transported in standard-sized containers. Once sealed, the contents of these containers are entirely hidden from U.S. Customs officials. Thieves take advantage of this by simply driving their contraband into containers, sealing the containers, and hauling them to the dock for shipment.

Enterprises using all three profiteering methods regularly engage in interstate, and even international, trafficking of automobiles and auto parts. Just as important, auto thieves have a severe and deleterious effect on interstate commerce by imposing significant costs on automobile owners. The most obvious cost is reflected in increasing[ly] high automobile insurance premiums. . . . [A]s much as 64% of an automobile owner's comprehensive insurance premium is attributable to theft claims. In addition, car owners often must take expensive security measures—such as anti-theft devices and off-street parking—to protect their investment. These costs depress the interstate commerce in automobiles by making car ownership considerably more expensive for consumers.

U.S.Code Cong. & Admin.News 1992, 2830–31.

Considering the forgoing, we find it *impossible* to conclude that Congress had *no* rational basis for finding that carjacking effects interstate commerce. We also find that there is a rational connection between § 2119 and Congress's asserted objective of addressing the serious national problems associated with automobile theft. Accordingly, we conclude that § 2119 is not constitutionally defective.[1]

## II

### 18 U.S.C. § 924(c) and Double Jeopardy

■ The Defendant also challenges the propriety of imposing punishment under both the carjacking statute and § 924(c), which provides a penalty enhancement for the use of a firearm during and in retaliation to a crime of violence. The Defendant argues that the only elements of § 924(c) are also necessary elements of the carjacking statute. Thus, the Defendant claims, punishment under both statutes violates the Double Jeopardy Clause's prohibition on the imposition of cumulative punishments.

18 U.S.C. § 2119 provides in relevant part,

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both....

18 U.S.C. § 924(c)(1) provides in pertinent part,

Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun to imprisonment for ten years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence.... No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

In this case, the Defendant claims that "the two counts are multiplicious because the only elements of the crime proscribed by the firearm statute, section 924(c) to wit, possession of a firearm during a crime of violence are also necessary elements of the 'carjacking' statute." Thus, according to the Defendant, conviction and sentencing enhancement under § 924(c) in this case, violates the test set fourth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We disagree.

In *Blockburger*, the United States Supreme Court enunciated the test to be applied when considering a double jeopardy challenge based on a claim of multiple punishments. The Court held that,

[t]he applicable rule is that where the act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

---

1. *But see, United State v. Cortner,* 834 F.Supp. 242 (M.D.Tenn.1993) (Wiseman, J.). In *Cortner* the court held that § 2119 was an unconstitutional exercise of congressional power under the Commerce Clause. The court concluded that there was not a sufficient nexus between the purely intrastate crime of carjacking and interstate commerce to trigger congressional authority to legislate. The court also concluded that the statute unfairly discriminated against those individuals who own cars wholly manufactured in the state in which the auto theft took place because § 2119 requires as an essential element that the automobile had previously been transported or shipped in interstate commerce. While we find the force of Judge Wiseman's reasoning somewhat compelling, we are more persuaded that the law as interpreted by the United States Supreme Court in this area of the law is exceptionally clear in at least one respect: congress's power to legislate under the Commerce Clause is extraordinary broad, and certainly broad enough to regulate carjacking.

*Id.* at 304, 52 S.Ct. at 182. After careful consideration, we conclude that sentencing an individual under both § 2119 and § 924(c) does not "fail" the *Blockburger* test, and therefore is not violative of the Double Jeopardy Clause. *See United States v. McHenry*, 830 F.Supp. 1025, 1027–28 (N.D.Ohio 1993) (Dowd, J.); *United States v. Zukinta*, 830 F.Supp. 418, 420–21 (E.D.Tenn.1993) (Edgar, J.).

■ As the *Zukinta* court stated,

[w]hen § 924(c) and § 2119 are compared and analyzed under the *Blockburger* test, there is no double jeopardy because each offense requires proof of at least one additional fact that the other does not. Section 2119 requires proof of the elements of taking a motor vehicle and it must be one which has been transported, shipped, or received in interstate or foreign commerce. These two elements are not required to be proved under § 924(c). Section 924(c) requires the government to prove that the use or carrying of the firearm by the defendant occurred "during and in relation to" a crime of violence. Mere possession of a firearm is not enough to support a finding of guilt under § 924(c). The Sixth Circuit has interpreted the language "during and in relation to" in § 924(c) to mean that the government must prove that there is a relationship between the firearm and the underlying offense which shows that the firearm at least facilitated the predicate offense. *Untied States v. Morrow*, 977 F.2d 222, 226 (6th Cir.1992), *cert. de-*

*nied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); *United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990) (holding convictions under both 18 U.S.C. § 2114 ("armed robbery"), which provides for its own sentencing for carrying a firearm, and § 924(c) does not constituted double jeopardy). However, § 2119 does not require the government to prove the element that the firearm was used or carried during and in relation to the taking of the motor vehicle. Instead, § 2119 only requires mere possession of the firearm by the defendant. Thus, §§ 924(c) and 2119 constitute separate and distinct offenses for purposes of double jeopardy under the *Blockburger* test.

*Zukinta*, 830 F.Supp. at 421; *See McHenry*, 830 F.Supp. at 1027–28. Likewise in *McHenry*, the court held that "the offense of carjacking (18 U.S.C. § 2119) requires only proof of the possession of a firearm whereas the provisions of 18 U.S.C. § 924(c) require more than the mere possession, but rather that the firearm be used or carried during and in relation to the crime of violence". 830 F.Supp. at 1027–28.[2] We concur in these conclusions.[3]

Accordingly, we find that sentencing the Defendant under both §§ 2119 and 924(c) does not violate the *Blockburger* test and consequently does not run afoul of the Double Jeopardy Clause of the Fifth Amendment. We therefore conclude that the Defendant's Motion to Dismiss Count 2 of the Indictment must be denied.[4]

---

**2.** As the Sixth Circuit succinctly stated in *United State v. Brown*, "[h]owever Broadly [the terms 'used' and 'carried' 'during and in relation to a crime of violence'] may be construed, section 924(c)(1) will not support a conviction for mere possession of a firearm during the course of criminal conduct." 915 F.2d 219, 224 (6th Cir. 1990).

**3.** The courts in both *McHenry*, 830 F.Supp. 1025 and *Zukinta*, 830 F.Supp. 418, considered whether there was a "clear legislative intent" to impose cumulative punishments under § 2119 and § 924(c). However, such an inquiry is only necessary in cases, unlike the case at bar, where the court concludes that the relevant statutory provisions *"fail"* the *Blockburger* test. *See Missouri v. hunter*, 459 U.S. 359, 366–67, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983). Consequently, our inquiry need proceed no further. We note,

however, that we find nothing in the language or legislative history of either §§ 2119 or 924(c) which "discloses an intent contrary to the presumption which should be accorded to these statutory provisions after application of the *Blockburger* test." *See id.* at 367, 103 S.Ct. at 679 (citation omitted); *see also Zukinta*, 830 F.Supp. 418. In this regard alone, we respectfully disagree with the opinion of Judge Dowd in *McHenry*. For still another approach, see, *United States v. Randall*, 834 F.Supp. 950 (W.D.Ky. 1993) (holding that imposition of punishment under both § 2119 and § 924(c) was permitted in light of clear legislative intent to do so, in spite of fact that it "failed" *Blockburger* test).

**4.** *But see United States v. Singleton*, 824 F.Supp. 609 (E.D.La.1993), which we decline to follow, holding that the defendant could not be punished under both § 2119 and § 924(c).

## CONCLUSION

For the forgoing reasons, the Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 25) and Motion to Dismiss Count 2 on Double Jeopardy Grounds (doc. 29) are hereby DENIED.

SO ORDERED.