**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Heath A. SINGLETON and Douglas Joseph Aleman, Defendants– Appellees.**

**No. 93–3479.**

United States Court of Appeals, Fifth Circuit.

March 10, 1994.

Merv. Hamburg, Dept. of Justice, Washington, DC, Herbert W. Mondros, Asst. U.S. Atty., Robert J. Boitmann, U.S. Atty., New Orleans, LA, for plaintiff-appellant.

Virginia L. Schlueter, Asst. Federal Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, LA, for Heath A. Singleton.

Robert S. Glass, Glass & Reed, New Orleans, LA, for Douglas Joseph Aleman.

Jim E. Lavine, Zimmermann & Lavine, Houston, TX, for Amici, Tx.Crim. & Nat'l Assoc. Lawyers.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

The United States appeals the dismissal on double jeopardy grounds of a firearms charge brought against two criminal defendants who were also charged with "carjacking". Although we agree with the district court that the firearms offense is not factually distinct from the carjacking offense, we hold that Congress has clearly indicated its intention to impose cumulative punishments. Therefore, we REVERSE the dismissal and REMAND the case to the district court with

instructions to reinstate the firearms count of the indictment.

## I.

This case arose out of the armed carjacking and murder of William Mullers in Hammond, Louisiana on November 15, 1992. The United States gives the following facts, which the defendants/appellees in their brief, for purposes of this appeal, do not contest. On November 15, 1992, defendants Heath Singleton, his brother George Singleton, and Douglas Joseph Aleman, and also Stephanie Durr conspired to steal a car from a supermarket parking lot in Hammond, Louisiana. Aleman was armed with a .38 caliber pistol and Heath Singleton was armed with a .22 caliber pistol. The four conspirators saw William Mullers arrive in his red 1991 Nissan Sentra and selected him as their victim. Aleman hijacked Mullers at gunpoint, ordering him to move over to the passenger side of his vehicle. Aleman drove Mullers's car to Aleman's home. The Singleton brothers and Durr followed. After they reached Aleman's home, Heath Singleton joined Aleman in Mullers's car. The two of them drove Mullers to an automatic teller machine and forced him to withdraw two hundred dollars from his bank account. They then drove to a location west of Hammond. George Singleton and Durr did not follow. When Aleman, Heath Singleton, and their captive reached their destination, Aleman shot Mullers three times in the head, killing him. Heath Singleton shot Mullers once in the back. Aleman and Heath Singleton then drove Mullers's car to Singleton's home, where they met George Singleton and Durr and described what they had just done to Mullers.

On January 8, 1993, Aleman and both Singleton brothers were indicted on federal charges arising out of the events of November 15, 1992. A superseding indictment filed on April 23, 1993 charged the defendants with: (1) conspiracy to commit armed carjacking,[1] (2) the completed carjacking offense,[2] and (3) using and carrying a firearm during and in relation to the commission of a violent crime.[3] Aleman was also charged with a fourth count of attempted escape from custody.[4] George Singleton pleaded guilty to the first and third counts of the indictment and his case was severed.

Appellees Aleman and Heath Singleton moved to require the prosecution to elect between counts (2) and (3) on the grounds that the constitutional principle of double jeopardy barred punishment for both offenses. The district court agreed and ordered the firearms count dismissed.[5] The United States timely appealed the dismissal of that count to this Court.[6] The question whether the Fifth Amendment's double jeopardy clause bars prosecution for both armed carjacking and possession of a firearm in the commission of a violent crime is one of first impression in this Court.[7] We review *de novo* the district court's legal conclusion that such a dual prosecution is indeed barred.

1. 18 U.S.C. § 371.

2. 18 U.S.C. § 2119.

3. 18 U.S.C. § 924(c).

4. 2 Rec. 430.

5. *United States v. Singleton*, 824 F.Supp. 609 (E.D.La.1993).

6. 18 U.S.C. § 3731.

7. We have uncovered no opinions of other Circuits bearing directly on this question. The issue has split the district courts, although a small majority of the reported district court cases agree with our conclusion that double jeopardy does not bar cumulative punishment for carjacking and a firearms charge under 18 U.S.C. § 924(c). Cases finding no double jeopardy bar include *United States v. Sabini*, 842 F.Supp. 1448 (S.D.Fla.1994); *United States v. Payne*, 841 F.Supp. 810 (S.D.Ohio 1994); *United States v. Zukinta*, 830 F.Supp. 418 (E.D.Tenn.1993); *United States v. Harwood*, 834 F.Supp. 950 (W.D.Ky. 1993); and *United States v. McHenry*, 830 F.Supp. 1020 (N.D.Ohio), *appeal dism'd*, 993 F.2d 1548 (6th Cir.1993) (table) (dismissing on jurisdictional grounds without reaching double jeopardy issue). Our own reasoning in this case most closely resembles that of the *Sabini* opinion. Cases holding that double jeopardy bars cumulative punishments for violations of §§ 2119 and 924(c) include *United States v. Smith*, 831 F.Supp. 549 (E.D.Va.1993) (citing the district court's opinion in this case); and *United States v. Moore*, 832 F.Supp. 335 (N.D.Ala.1993).

## II.

### A. Sections 2119 and 924(c) Fail the Block-burger Test

■■ The Fifth Amendment's double jeopardy clause protects a criminal defendant against, inter alia, "multiple punishments for the same offense".[8] We apply the *Blockburger v. United States*[9] test to determine whether two different statutes punish the same offense. *Blockburger* requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not".[10] If either statute contains no element not also found in the other statute, the statutes "fail" the *Blockburger* test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent".[11] The two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes.[12] The *Blockburger* inquiry focuses on the statutory elements of the offenses,[13] not on their application to the facts of the specific case before the court.[14] Thus, the question is not whether *this* violation of § 2119 also constituted a violation of § 924(c), but whether *all* violations of the former constitute violations of the latter.

The second count of the indictment against Aleman and Heath Singleton charged them with carjacking in violation of 18 U.S.C. § 2119. Section 2119 provides that:

> Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—
>
> (1) be fined under this title or imprisoned not more than 15 years, or both,
>
> (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>
> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

We read § 2119 to require proof of four elements to convict: the defendant, (1) while possessing a firearm, (2) took from the person or presence of another (3) by force and violence or intimidation (4) a motor vehicle which had moved in interstate or foreign commerce.[15]

The third count of the indictment charged Aleman and Heath Singleton with using or carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). In pertinent part, § 924(c) provides:

> (1) Whoever, during and in relation to any crime of violence ... uses or carries a firearm shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years....
>
> .    .    .    .    .
>
> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physi-

---

**8.** *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

**9.** 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**10.** *Id.* at 304, 52 S.Ct. at 182. The *Blockburger* "same elements" test is the only hurdle the prosecution must overcome to avoid a double jeopardy bar. *See United States v. Dixon*, 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (rejecting "same conduct" test of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)).

**11.** *Whalen v. United States*, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980).

**12.** *See Brown v. Ohio*, 432 U.S. 161, 164, 97 S.Ct. 2221, 2224, 53 L.Ed.2d 187 (1977).

**13.** *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

**14.** *See, e.g., United States v. Woodward*, 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985).

**15.** We do not disapprove of the *Sabini* court's division of these same facts into six elements. *See Sabini*, 842 F.Supp. at 1451.

cal force against the person or property of another, or

    (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The relevant portions of § 924(c) require proof of only two elements: the defendant (1) used or carried a firearm (2) during and in relation to a crime of violence.[16]

We agree with the district court that § 924(c) does not require the government to prove any fact beyond those required under § 2119. Every defendant who violates § 2119 necessarily violates § 924(c). For double jeopardy purposes, the crimes are not distinct. We shall consider the two elements of § 924(c) in turn and explain why they will always be satisfied when a defendant violates § 2119.

### 1. "Using or Carrying" A Firearm

    ■ Carjacking is a crime only when the defendant has a gun. Section 2119 requires that a defendant "possess[ ]" the firearm, while § 924(c) requires that the defendant "use[ ] or carr[y]" it. Given the breadth that the Supreme Court has given to the "use or carry" requirement of § 924(c),[17] however,

any defendant who "possesses" a firearm within the meaning of § 2119[18] necessarily "uses or carries" it. Accordingly, anyone who satisfies the first element of § 2119 also satisfies the first element of § 924(c).

There is nothing manufactured or suspect about the legislative histories of §§ 2119 and 924(c) supporting our conclusion. In neither statute did Congress attempt to demarcate a boundary between the terms "possess" and "use or carry". Indeed, in the legislative histories of both statutes the terms are occasionally used interchangeably. For instance, the Senate committee report on the 1984 amendments to § 924(c) refers to "the firearm's *use or possession*".[19] Senators DeConcini and Pressler both described the carjacking statute as punishing those who "use" firearms in carjacking.[20]

### 2. "During and in relation to" a "crime of violence"

    ■ Carjacking is always and without exception a "crime of violence" as that term is defined in 18 U.S.C. § 924(c)(3). At oral argument the government hypothesized that taking a car by threats or intimidation while coincidentally possessing a firearm would violate § 2119, but not § 924(c) because no violence was used. We reject that hypothesis.

---

**16.** *Smith v. United States*, 508 U.S. ——, ——, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138, 147, *reh'g denied*, —— U.S. ——, 114 S.Ct. 13, 125 L.Ed.2d 765 (1993).

**17.** A firearm need not be used *as a weapon* to violate § 924(c). *Smith v. United States* upheld a defendant's conviction for violating § 924(c) when the defendant had merely traded his gun for cocaine. 508 U.S. at ——, 113 S.Ct. at 2058, 124 L.Ed.2d at 153 ("the phrase 'uses ... a firearm' is broad enough in ordinary usage to cover use of a firearm as an item of barter or commerce").

    The Supreme Court's opinion in *Smith* did not discuss the term "carry" in § 924(c). Congress, however, must have intended for that term to be given a similarly broad reading. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 314 n. 10, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3492 n. 10 ("Evidence that the defendant had a gun in his pocket but did not display it, or refer to it, could nevertheless support a conviction for 'carrying' a firearm....").

**18.** As discussed below, we do not read § 2119 to authorize conviction on proof of "mere possession" of the firearm. Rather, there must be

some relation between the possession of the firearm and the taking of the vehicle. Therefore, the cases the government cites distinguishing "using or carrying" from "mere possession" are inapposite. *See, e.g., United States v. Featherston*, 949 F.2d 770, 776–77 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1698, 118 L.Ed.2d 408 (1992), —— U.S. ——, 112 S.Ct. 1771, 118 L.Ed.2d 430 (1992), —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992).

**19.** S.Rep. No. 225, at 314 n. 10, 1984 U.S.C.C.A.N. at 3182, 3492 n. 10 (emphasis added).

**20.** Senator DeConcini expressed reservations about "the provision [of § 2119] that makes the *use* of a firearm an essential element of the crime". 138 Cong.Rec. S17,960 (daily ed. Oct. 8, 1992) (emphasis added). Senator Pressler stated that a related bill "represented a giant step forward in slowing down auto theft by subjecting carjackers who *use* firearms to severe Federal criminal penalties". *Id.* (emphasis added).

No actual violence need occur for a crime to be a "crime of violence" under § 924(c)(3); it is enough that there is a "substantial risk" of physical force being used against another's "person or property". Armed carjacking always presents a substantial risk of force being used against a victim reluctant to surrender his or her vehicle. Even those who comply with the carjacker's demands are at substantial risk, as demonstrated by the fate of William Mullers in this case.

We are left, then, with the government's argument that it is possible to commit armed carjacking without using or carrying a firearm "during and in relation to" a crime of violence. Of course, because possession of a firearm is an element of carjacking, a firearm will always be used or carried "during" the offense. That leaves the requirement that the firearm be used or carried "in relation to" the crime.

The government urges that a § 2119 conviction can rest on "mere possession" of the firearm, regardless of whether the firearm had any "relation to" the offense. At oral argument, the government hypothesized that a defendant could violate § 2119 by taking a vehicle while carrying a pistol in his knapsack, even if the pistol was never brandished. That scenario, however, does not constitute "mere possession"; a firearm is obviously carried "in relation to" a crime even if the defendant does not plan to use it unless things go awry. A better example of "mere possession" would be this: a would-be carjacker, carrying only a dagger and an empty knapsack, demands that the victim, at knifepoint, surrender his car. While the victim is complying, a passerby casually drops a firearm into the carjacker's open knapsack, without the carjacker noticing. Unquestionably the carjacker had "mere possession" of a firearm during the offense. But can that admittedly unlikely scenario be what Congress meant to punish when it condemned the evils of "armed carjacking"? We think not. The firearm is central to the crime of carjacking. Too tenuous a connection between the firearm and the taking of the vehicle removes the defendant's conduct from the range proscribed by § 2119. "Mere" possession of the firearm is insufficient; some relation between the firearm and the taking of the vehicle is required.[21]

The legislative history of § 2119 supports the view that a firearm must be possessed "in relation to" the carjacking.[22] The House Judiciary Committee's report on the bill that became § 2119 defined "armed carjacking" this way:

> The most recent development in auto theft is "armed carjacking." In these incidents, two or three criminals approach a car waiting at a traffic light, or stopped by means of a deliberate "fender-bender" accident, and force the driver to turn over the keys *at gunpoint.*[23]

Representative Schumer, an initial sponsor of the legislation that became § 2119, gave this description of the conduct at which the bill was directed:

> This bill.... would create a new offense for armed carjacking—this is the most recent innovation in auto theft, in which the criminal brazenly walks up to a car waiting at a traffic light, *points a gun at the driver,* and demands that the car be turned over.[24]

That § 2119 now requires that the gun be possessed "in relation to" the offense is further demonstrated by the recent introduction in Congress of legislation to repeal that requirement.[25] We conclude that a require-

**21.** *Sabini,* 842 F.Supp. at 1450–51; *Harwood,* 834 F.Supp. at 951 n. 1; *Moore,* 832 F.Supp. at 337. *Contra Payne,* 841 F.Supp. at 813–814; *Zukinta,* 830 F.Supp. at 421; *McHenry,* 830 F.Supp. at 1022.

**22.** *See, e.g., supra* note 20.

**23.** H.R.Rep. No. 851(I), 102d Cong., 2d Sess. 15, *reprinted in* 1992 U.S.C.C.A.N. 2829, 2831 (emphasis added).

**24.** 138 Cong.Rec. E800 (daily ed. Mar. 24, 1992) (emphasis added).

**25.** Senators Lieberman and Pressler jointly introduced S. 942 for this purpose. Senator Lieberman described the need for the new legislation this way:
> We were all sickened by the Basu case—the carjacking in suburban Maryland. It was the collective horror over that case that prompted Congress last year to federalize carjacking and provide stiff penalties for the crime. *Ironical-*

ment that the firearm be possessed "in relation to" the carjacking is implicit in § 2119.[26] Therefore, proof of a violation of § 2119 always proves a violation of § 924(c), and the two statutes fail the *Blockburger* "same elements" test.

**B.  Congress Clearly Indicated an Intent to Punish Cumulatively Violations of §§ 2119 and 924(c)** [27]

■ Congress is presumed to know the *Blockburger* test and to legislate with it in mind.[28] Thus, when two statutes fail the *Blockburger* test, a presumption arises that Congress intended only a single punishment.[29] That presumption can be overcome, however, by a *"clear indication* of contrary legislative intent".[30] Although the issue is not free from doubt, we are satisfied that Congress has clearly indicated its intent to punish cumulatively violations of §§ 2119 and 924(c).

**1.  The Text of § 924(c)**

■ We begin with the text § 924(c),[31] which provides, in part, that:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) . . . uses or carries a firearm, shall,

*in addition to the punishment provided* for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years,. . . .[32]

The italicized clause states that Congress intended for § 924(c)'s five-year sentence to be imposed cumulatively with the punishment for the predicate drug-related or violent crime.[33] Accordingly, § 924(c) clearly indicates Congress's intent to punish cumulatively violations of §§ 924(c) and 2119. That clear indication of Congress's intent saves the statutes from the double jeopardy bar even though they fail the *Blockburger* test.

We shall next deal with two objections to this conclusion, one based on the legislative history of § 924(c) and the other based on the chronological order in which §§ 2119 and 924(c) were enacted. Although neither objection is without force, we do not find them persuasive.

**2.  The Legislative History**

■ The defendants/appellees' chief argument turns on the legislative history of the 1984 amendments to 18 U.S.C. § 924(c). They contend that the amendments limited the application of § 924(c) to a certain class of statutes: those providing for a higher "enhanced" sentence if a deadly weapon is used. The district court agreed that the

ly, the law we passed last year could not be used to prosecute that crime, even if it had occurred after the law's enactment, because a gun was not used in taking the car, although the carjacking resulted in that innocent woman's death. 139 Cong.Rec. S5821 (daily ed. May 12, 1993) (emphasis added).

26. Section 924(c) itself did not always contain the "in relation to" language. After Congress added the phrase "in relation to" to § 924(c), then-Judge Anthony Kennedy, speaking for the Court of Appeals for the Ninth Circuit, held that the amendment had merely made explicit a requirement that was always implicit in the statute. *See United States v. Stewart*, 779 F.2d 538, 539–40 (9th Cir.1985). Just as a requirement of a relationship between the firearm and the offense was implicit in § 924(c) before the 1984 amendment, so is it implicit today in § 2119.

27. I am indebted to Judge Higginbotham for much of the analysis and language of this section of the opinion.

28. *Albernaz v. United States*, 450 U.S. 333, 341–42, 101 S.Ct. 1137, 1143–44, 67 L.Ed.2d 275 (1981).

29. *See Whalen*, 445 U.S. at 692, 100 S.Ct. at 1438.

30. *Id.* (emphasis added); *see also Albernaz*, 450 U.S. at 340, 101 S.Ct. at 1142–43 (1981).

31. The text of the statute is the best indicator of Congress's intent to impose cumulative punishments. *See United States v. Zabaneh*, 837 F.2d 1249, 1258 (5th Cir.1988).

32. 18 U.S.C. § 924(c)(1) (emphasis added).

33. *See United States v. Gibbons*, 994 F.2d 299, 301–02 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 202, 126 L.Ed.2d 160 (1993); *United States v. Mills*, 835 F.2d 1262, 1264 (8th Cir.1987) (per curiam).

1984 amendments had effectively limited § 924(c).[34]

The defendants' argument is as follows. Section 924(c) was revised in 1984 in part to overturn two Supreme Court decisions, *Simpson v. United States*[35] and *Busic v. United States*.[36] *Simpson* and *Busic* had held § 924(c) inapplicable to statutory offenses which included their own "enhancement" provisions for the use of a firearm.[37] The legislative history of the 1984 amendments stated Congress's displeasure with those Court decisions:

> [T]he Supreme Court's decisions in *Simpson v. United States*, and *Busic v. United States*, have negated [§ 924(c)]'s use in cases involving statutes ... which have their own enhanced, but not mandatory, punishment provisions in situations where the offense is committed with a dangerous weapon. These are precisely the type of extremely dangerous offenses for which a mandatory punishment for the use of a firearm is the most appropriate.
>
> .    .    .    .    .
>
> [S]ubsection 924(c) should be completely revised to ensure that all persons who commit Federal crimes of violence, including those crimes set forth in statutes which

already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.[38]

What Congress was concerned about in 1984, the defendants contend, was the absence of *mandatory* minimum penalties for using a firearm even when the statutes included an "enhancement" provision for the use of a firearm.[39] The 1984 amendments to § 924(c) therefore laid down a mandatory five-year minimum sentence. At the time § 2119 was enacted in 1992, however, mandatory minimum sentences were required by the Sentencing Guidelines. Therefore, the defendants conclude, the justification for the 1984 amendments to § 924(c) does not apply to § 2119.

Although this reading of the 1984 amendments has some force, we do not think it sufficient to support the defendants' position. The statute uses the phrase "*including* a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device". Similar language

---

**34.** 824 F.Supp. at 611. The limitation the district court saw in the 1984 amendments was not quite the one urged by the defendants. Although the district court discussed the *Simpson* and *Busic* cases, it concluded that that portion of the legislative history was "irrelevant here because carjacking has no enhancement penalty for the use of a firearm". *Id.* Instead, the district court noted that the 1984 amendments changed the predicate offenses for the application of § 924(c) from "any felony" to "any crime of violence". *Id.* We consider that change unimportant to this case, because carjacking is plainly a "crime of violence" within the meaning of § 924(c)(3).

**35.** 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978).

**36.** 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).

**37.** The defendant in *Simpson* was convicted of bank robbery under a statute which authorized an enhanced penalty (a maximum fine of $10,000 instead of $5,000, and a maximum prison term of 25 years instead of 20) if the robbery was committed "by the use of a dangerous weapon or device". 435 U.S. at 7, 98 S.Ct. at 910. In

*Busic*, the defendants were convicted of assaulting a federal officer under a statute which authorized an enhanced penalty (a maximum fine of $10,000 instead of $5,000, and a maximum prison term of ten years instead of three) if the defendant "use[d] a deadly or dangerous weapon". 446 U.S. at 401 n. 4, 100 S.Ct. at 1750 n. 4. The Court in each case held that those "enhancement" provisions could not be further enhanced by adding to them the firearm penalties of § 924(c). 435 U.S. at 16, 98 S.Ct. at 914–15; 446 U.S. at 411, 100 S.Ct. at 1755.

**38.** S.Rep. No. 225, at 312–13, 1984 U.S.C.C.A.N. at 3184, 3490–91 (footnotes omitted, emphasis added).

**39.** Section 2119 is not such an "enhancement" statute. The kinds of statutes at issue in *Simpson* and *Busic* provided one level of punishment if the offense was committed without a dangerous weapon, and another higher punishment if a dangerous weapon was used. Carjacking, however, as defined in § 2119, always requires a gun. Thus, there is no "enhanced" sentence if a gun is used; rather, if no gun is used, there is no violation of § 2119.

appears in the legislative history quoted above. The ordinary sense of the word "including" is "including, but not limited to". Other parts of the legislative history also suggest that Congress was not concerned exclusively with overturning *Simpson* and *Busic,* but was merely using *Simpson* and *Busic* as examples of how the judiciary had gone astray in interpreting § 924(c). The portion of the legislative history quoted above opens with the following sentence:

> Part D of title X is designed to impose a mandatory penalty without the possibility of probation or parole, for *any person* who uses or carries a firearm during and in relation to a Federal crime of violence.[40]

That broad statement does not purport to limit the application of § 924(c) to statutes containing an "enhancement" provision for the use of a firearm. The use of "any person" in the text just quoted, and the use of "all persons" in the earlier quotations from the legislative history, make it clear that Congress wanted to stack § 924(c)'s punishment atop all predicate crimes that came within the statute, not just the *Simpson/Busic* variety of predicate crimes for which the statutes included "enhancement" provisions.[41] Because carjacking is a "crime of violence" under § 924(c)(3), we hold that Congress clearly indicated its intent to cumulate the punishment of § 924(c) with the punishment of § 2119.

### 3. The Chronological Order of the Statutes

We turn next to an objection not raised by the defendants, but considered persuasive by many of the district courts that have found a double jeopardy violation in cases involving §§ 2119 and 924(c). These courts have noted that § 2119 is the newer statute, having been enacted two years after the most recent amendments to § 924(c). Because § 2119 does not refer to § 924(c), according to this line of reasoning, cumulative punishments for carjacking and the firearms charge are not clearly indicated.

The district court in this case stated that "[a]s the more specific statute and the later expression of Congress, section 2119, 'carjacking', takes precedence over the general firearm statute, section 924(c)".[42] The district court in *United States v. Moore* also thought the order of the statutes' enactment dispositive:

> If § 924(c)(1) had been enacted *after* § 2119, instead of *vice versa,* there might be an argument that Congress intended to punish the same conduct twice. However, this court is as unwilling to conclude that Congress intended in 1992 to do in a convoluted and strained way what it could so easily have accomplished by the use of plain English as it is to doubt Congressional constitutional understanding.[43]

This line of reasoning relies on two crucial facts. First, § 2119 is the newer statute, and second, § 2119 does not refer to § 924(c). We consider neither fact sufficient to support the conclusion that double jeopardy bars cumulative punishments for violating §§ 2119 and 924(c). Congress may make a plain

---

**40.** S.Rep. No. 225, at 312, 1994 U.S.C.C.A.N. at 3182, 3490 (emphasis added).

**41.** In 1981, Congress considered and rejected an amendment to § 924(c) that would have excluded from its reach those statutes, like § 2119, in which use or possession of a deadly weapon was already an element of the predicate offense. The Senate report on the 1981 crime bill discussed the effect of the proposed revision to § 924(c):

> [T]he purpose of this section [§ 924(c)] is to create a separate basis of criminal liability for the possession or employment of any firearm, destructive device, or dangerous weapon in the commission of a crime because of the potential danger posed to human life by such conduct.... Where, however, the nature of the offense itself involves using or possessing a weapon, the factor of potential danger to life

has already been taken into account, and there is no reason to permit the pyramiding of offenses and punishment through application of this section. Accordingly, the Committee does not intend that this section be construed to apply where the underlying offense is one involving the use or possession of a weapon of the type here covered....

S.Rep. No. 307, 97th Cong., 1st Sess. 890, *microformed on* Sup.Docs. No. Y 1.1/5:97–307 (U.S. Gov't Printing Office). Congress rejected the proposed change to § 924(c), suggesting that Congress intended § 924(c) to apply even when use of a deadly weapon was already an element of the predicate offense.

**42.** 824 F.Supp. at 611.

**43.** *Moore,* 832 F.Supp. at 337.

statement of its intent to stack punishments in a specified class of crimes as it did in § 924(c). Once Congress does that, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class. The *Moore* approach would require Congress to repeat itself, restating in each subsequent enactment an intention Congress thought it clearly expressed once already. We see no reason to require such a convoluted approach to lawmaking. Even if we were disposed to do so, however, we could not adopt the *Moore* approach without placing ourselves in tension with two lines of established authority. First, the *Moore* approach is in tension with *Missouri v. Hunter,* [44] in which the Supreme Court upheld two Missouri statutes against a double jeopardy challenge. One of the two statutes criminalized robbery; the other, similar in purpose to § 924(c), imposed an enhanced penalty on those guilty of "armed criminal action". In sustaining the two statutes against a double jeopardy challenge, the Court did not require the Missouri legislature to make a clear statement for enhancement in each statute, but only in the general enhancement provision itself. The Court's reasoning suggests that once Congress has stated a general intention to impose cumulative punishments in § 924(c), it need not do so again in § 2119.

Second, the *Moore* approach is in tension with a line of cases upholding cumulative punishments under § 924(c) and 18 U.S.C. § 2113, the federal bank robbery statute. As the government's brief points out, several Circuits, including this one, have held that § 924(c) expressly authorizes cumulative punishments under §§ 2113 and 924(c) notwithstanding the absence of any mention of cumulation in § 2113 itself.[45] Congress was no doubt aware of those cases when it expressly modeled § 2119 on federal robbery statutes like § 2113.[46] To hold that § 924(c) authorizes cumulative punishment with § 2113 but not with § 2119 would be to establish different standards for statutes Congress intended to be treated the same.

■ Congress's authorization of multiple punishments in § 924(c) establishes a general rule of enhancement from which Congress is free to depart in later statutes if it chooses. Absent language expressing a departure from § 924(c), however, we must read the later enacted statutes in harmony with Congress's previously expressed intent to impose cumulative punishments.[47] Accordingly, we hold that Congress may clearly indicate its intent to impose cumulative punishments in *either* of two challenged statutes; it need not do so in *both.* We further hold that the order in which the statutes are enacted is irrelevant to the analysis—as long as Congress has clearly indicated an intent to impose cumulative punishments in either statute, the statutes pass constitutional muster.

---

**44.** 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

**45.** *See, e.g., United States v. Lanzi,* 933 F.2d 824, 825–26 (10th Cir.1991); *United States v. Holloway,* 905 F.2d 893, 894–95 (5th Cir.1990); *United States v. Harris,* 832 F.2d 88 (7th Cir.1987); *United States v. Shavers,* 820 F.2d 1375, 1377–78 (4th Cir.1987); *United States v. Blocker,* 802 F.2d 1102, 1104–05 (9th Cir.1986); *United States v. Doffin,* 791 F.2d 118, 120–21 (8th Cir.), *cert. denied,* 479 U.S. 861, 107 S.Ct. 210, 93 L.Ed.2d 140 (1986).

**46.** The House Judiciary Committee's report on § 2119 indicates that federal robbery statutes like § 2113 served as models for the new carjacking statute:

This Section creates a new federal offense for armed carjacking, punishable by imprisonment for up to 15 years. The definition of the offense tracks the language used in other federal robbery statutes (18 U.S.C. § 2111, 2113, and 2118). The offender must possess a firearm during the crime, and the stolen automobile must have moved in interstate commerce.
H.R.Rep. No. 851(I), at 17, 1992 U.S.C.C.A.N. at 2829, 2834.

**47.** We agree with the district court's assessment of this argument in *United States v. Sabini:*

Congress has already made clear its intent of permitting cumulative punishment under section 924(c), through the 1984 amendment to section 924(c). Nothing in the previously discussed Supreme Court cases requires Congress to reassert such intent as to subsequently enacted statutes that involve firearms. Therefore, Congress' failure to explicitly address the interplay of the two statutes when it enacted section 2119 does not serve to negate the broad intent: of section 924(c).
*Sabini,* 842 F.Supp. at 1452.

### III.

This is a close case and we do not consider the analysis we have given of §§ 2119 and 924(c) to be the only one a reasonable mind could accept. The issues involved are important and have provoked thoughtful debate among the members of the panel. We are satisfied, however, that Congress has made a sufficiently clear indication of its intent to impose cumulative punishments for violations of § 924(c) and all crimes of violence, including "carjacking", to satisfy the requirements of the Double Jeopardy Clause. Accordingly, we REVERSE the district court's dismissal of Count III of the indictments in this case, and REMAND the case to the district court with instructions to reinstate those charges.[48]

---

**48.** The defendants/appellees also face state charges for murder and kidnapping arising out of the events of November 15, 1992. For that reason, the Texas Criminal Defense Lawyers Association and the National Association of Criminal Defense Lawyers, as amici curiae, invite us to reconsider the constitutionality of the "dual sovereignty" exception to double jeopardy in this case. We decline the invitation. None of the appellants raised the constitutionality of the "dual sovereignty" exception in their briefs, and we generally do not allow amici to raise issues not raised by the parties absent exceptional circumstances. *See Resident Council of Allen Parkway Village v. United States Dep't of Housing & Urban Development*, 980 F.2d 1043, 1049 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993). Even if the constitutionality of the "dual sovereignty" doctrine were properly before us, however, we are bound by Supreme Court precedent upholding the doctrine. *See, e.g., Heath v. Alabama*, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). It is to that Court amici must address their arguments.