**UNITED STATES of America, Appellee/Cross-Appellant,**

v.

**Carlos JONES, also known as Dion Tillman, Appellant/Cross-Appellee.**

Nos. 94-1127, 94-1130.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided Aug. 25, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 19, 1994.

Mark Joseph Cero, Sr., St. Louis, MO, argued, for appellant.

Thomas J. Mehan, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, and JOHN R. GIBSON and FRIEDMAN *, Senior Circuit Judges.

* DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

FRIEDMAN, Senior Circuit Judge.

A jury in the United States District Court for the Eastern District of Missouri convicted the appellant Tillman of carjacking (the armed taking of a motor vehicle), in violation of 18 U.S.C. §§ 2119 and 2 (Count I) and using or carrying a firearm during and in relation to the carjacking, in violation of 18 U.S.C. § 924(c)(1) Count II). Prior to sentencing, the district court[1] dismissed Count II, on the ground that multiple punishments for the two offenses would subject Tillman to double jeopardy.

In his appeal, Tillman contends that the district court improperly denied his motion for a new trial, which he sought on two grounds: (1) that the government's failure to disclose to him before trial several prior convictions of a principal government witness denied him due process; and (2) that there was newly discovered evidence that he would have used to impeach another government witness. In its cross appeal, the government challenges the district court's ruling that multiple punishments for the two offenses would subject Tillman to double jeopardy.

We affirm the denial of a new trial, but reverse the dismissal of Count II on double jeopardy grounds and remand for sentencing under that count.

## I

A. There was evidence from which the jury could have found as follows:

Michael Patrick and Donald Ray drove in Patrick's friend's car to a gasoline station, where Patrick used the telephone and Ray remained in the car. Tillman and two others, wearing bandannas over their faces and carrying handguns, robbed Patrick of his money. Tillman and another of the robbers then entered the car, ordered Ray at gunpoint to get out, which he did, and drove off. After a brief police chase, the car struck the curb, and Tillman was arrested as he ran from the car. At trial, Tillman admitted that he drove the car without permission.

Tillman and James Mills were indicted on two counts charging them with carjacking and using or carrying a firearm during and in relation to the carjacking. The case was severed for trial, and Tillman was tried before Mills, who ultimately was acquitted.

B. Prior to trial, Tillman moved for production of the arrest and conviction reports of all witnesses the government intended to call. The prosecution made a records check of Donald Ray, which included a review of the Missouri Uniform Enforcement records, which did not show any convictions.

On the morning of Tillman's trial, Ray told the prosecutor that he had served time in Illinois for burglary, and the prosecutor informed Tillman of that fact. Tillman used that conviction in cross-examining Ray.

At the subsequent trial of co-defendant Mills, Mills brought out in cross-examination of Ray that the latter had multiple convictions, including two for possession of a stolen vehicle, aggravated battery, armed robbery, and another theft. Each of these convictions was in Illinois state proceedings, and was a "public record."

C. At Tillman's trial, Patrick testified that he was robbed at the phone booth by Tillman and one accomplice. Patrick stated on cross-examination that the money taken was in part from his employment at Number One Wholesale, on 2101 Salisbury, where he worked full-time for Maurice Locke, and still worked. At co-defendant Mills' later separate trial, however, Billy Hicks testified that he owned the property at 2101 Salisbury, that Locke had been out of the building for a couple of years and was not running Number One Wholesale out of that building for that time, including the day of Tillman's trial, and that Number One Wholesale had been out of business for two years. On cross-examination, Hicks gave testimony which appeared somewhat inconsistent with his prior testimony about the operation of Number One Wholesale at 2101 Salisbury.

D. After the jury verdict, the district court granted Tillman's motion to dismiss

---

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Count II, on the ground that multiple punishments under the two counts would subject Tillman to double jeopardy. The court stated:

Congress has not clearly indicated an intent to authorize cumulative punishment for carjacking and using or carrying a firearm during a carjacking. Therefore cumulative sentences would violate double jeopardy.

E. Tillman moved for a new trial on two grounds: (1) the prosecution's failure to disclose Ray's other convictions, which could have been used to impeach Ray, denied Tillman due process under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (2) Hicks' testimony at Mills' trial regarding Patrick's employment at Number One Wholesale, which allegedly impeached Patrick's trial testimony on that subject, constituted newly discovered evidence. The district court denied a new trial.

## II

In *Brady,* the Supreme Court stated:

We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. at 87, 83 S.Ct. at 1196–97.

As this court has recognized, "the *Brady* rule applies to impeachment evidence, as well as to exculpatory evidence." *United States v. Wayne,* 903 F.2d 1188, 1192 (1990) (citing *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).

■ Tillman contends that the prosecution's failure to disclose to him before trial Ray's additional Illinois state convictions, which he could have used to impeach Ray, violated *Brady* and, therefore, denied him due process.

■ The fatal flaw in this contention is that *Brady* requires the prosecution to disclose to the defendant only evidence in the prosecution's possession. Prior to trial, however, the only conviction of Ray that the prosecution knew about was his burglary conviction. The prosecution learned about this conviction from him only on the morning of trial, and promptly disclosed it to Tillman. The prosecution did not learn about Ray's other Illinois convictions until they were disclosed in the subsequent trial of Mills, by which time Tillman's trial had been completed.

The government has no "affirmative duty ... to take action to discover information which it does not possess." *United States v. Tierney,* 947 F.2d 854, 864 (8th Cir.1991) (citation omitted). *See also United States v. Dunn,* 851 F.2d 1099, 1101 (8th Cir.1988) ("the government has no affirmative obligation to discover potentially exculpatory information which it neither possessed nor of which it was aware"). There is, therefore, no *Brady* violation if the government does not "possess" the material at issue. *Id.* In addition, the "prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find impeaching evidence." *United States v. Stuart,* 923 F.2d 607, 612 (8th Cir.1991), *cert. denied,* 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991).

Tillman contends that the prosecution should be deemed to have possessed before trial the information about Ray's additional convictions because it could have discovered that information if it had made a proper inquiry into Ray's criminal history, by checking the records of the Federal Bureau of Investigation or making inquiry of the National Crime Information Center. He relies on the Fifth Circuit's decision in *United States v. Auten,* 632 F.2d 478 (1980), which held that the government was in constructive possession of evidence of a witness's additional convictions, despite its apparent lack of actual knowledge of them, because the information was "readily available" to it. *Id.* at 481.

In the present case, unlike *Auten,* the government did make a records check—of the criminal records of Missouri, the state where the crimes were committed—and found nothing. We do not believe that when the government learned, on the morning of trial, of Ray's Illinois burglary conviction, its failure to make further inquiry about Ray's other convictions put it in "constructive possession"

of knowledge of those convictions, so that its failure to disclose them to Tillman constituted a Brady violation.

*Auten,* of course, does not bind us. To the extent it is inconsistent with our decisions cited above, we decline to follow it.

Furthermore, there is nothing in the record that shows that a check of the records of the Federal Bureau of Investigation or the National Crime Information Center would have disclosed Ray's other state convictions. Tillman's argument, therefore, is "nothing more than a shot in the dark." *See United States v. Navarro,* 737 F.2d 625, 632 (7th Cir.), *cert. denied,* 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984) (rejecting such a contention where the defendant offered no evidence that there were records of prior convictions in the federal government's files).

■ Moreover, the information about Ray's criminal record was first revealed through the investigation made by Mill's counsel. This suggests that this information also was accessible to Tillman's attorney. The district court in Mills' trial concluded that Ray's convictions were a "public record." When information is readily available to the defendant, it is not *Brady* material, and the prosecution does not violate *Brady* by not discovering and disclosing the information. *Tierney,* 947 F.2d at 864; *United States v. Willis,* 997 F.2d 407, 412–13 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994). *See also Reese v. Frey,* 801 F.2d 348, 350 (8th Cir.1986) (the court file in which an arrest warrant was found was "readily available" for *Brady* purposes). "[T]he Government cannot be held to have suppressed Brady material" when the defendant is in "a position of parity with the government as far as access to this material." *United States v. Johnston,* 543 F.2d 55, 57 (8th Cir.1976).

The purpose of the *Brady* principle is to assure the defendant a "fair trial". *Evans v. Janing,* 489 F.2d 470, 474 (8th Cir.1973). Tillman has not shown that the government's failure to disclose Ray's additional convictions denied him a fair trial.

To the extent that Tillman's motion for a new trial may be asserting only newly discov- ered evidence of Ray's other convictions, rather than a *Brady* due process claim, the district court did not abuse its discretion in denying it. See the discussion in Part III, below. Ray's other criminal convictions would have been merely additional material to be used in cross-examining the witness, and as such probably would not have produced an acquittal. *United States v. Page– Bey,* 960 F.2d 724, 727 (8th Cir.1992).

### III

■ Tillman contends that Hicks' testimony at Mills' trial about Patrick's employment at Number One Wholesale contradicted Patrick's testimony on that subject at Tillman's trial; and that that was newly discovered evidence that warranted a new trial, since Tillman could have used that evidence to impeach Patrick's testimony.

■ Motions for new trial based on newly discovered evidence are disfavored. *United States v. LaFuente,* 991 F.2d 1406, 1410 (8th Cir.1993). A district court's denial of a new trial based on newly discovered evidence will not be reversed unless a clear abuse of discretion has occurred. *Id.* at 1408. "A new trial based on newly discover- ed evidence must meet several criteria. *See United States v. Bednar,* 776 F.2d 236, 238 (8th Cir.1985). Among other factors, the evidence must not be merely impeaching, and the evidence must be of such a nature that a new trial would probably produce an acquit- tal. *Id.*" *Page–Bey,* 960 F.2d at 727. The newly discovered evidence regarding Pat- rick's employment does not meet those crite- ria.

Tillman's "new" evidence was merely im- peachment evidence on a collateral matter, the witness' employment. There is no basis for concluding that the use of such impeach- ing evidence probably would produce an ac- quittal in a new trial. The record does not support Tillman's contention that the govern- ment knowingly presented false testimony. The district court did not abuse its discretion in denying a new trial.

## IV

The double jeopardy clause protects a defendant against, among other things, "multiple punishments for the same offense," *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)—unless there is "a clear indication of contrary legislative intent." *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980).

As this court has explained:

The Supreme Court has held that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). Thus, the Double Jeopardy Clause does not prohibit the government from proving violations of two criminal statutes with the same course of conduct if Congress clearly intended to subject defendants to such "double punishment." *Hunter,* 459 U.S. at 367, 103 S.Ct. at 678; *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978)."

*United States v. Simpson,* 979 F.2d 1282, 1285 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1345, 122 L.Ed.2d 727 (1993).

■ The district court here held that the double jeopardy clause barred imposing a sentence under the Firearms Act charge (Count II), in addition to the sentence for carjacking, because "Congress has not clearly indicated an intent to authorize cumulative punishment for carjacking and using or carrying a firearm during a carjacking." We conclude, however, that the language and the legislative history of the Firearms Act call for the contrary conclusion.

The Firearms Act, 18 U.S.C. § 924(c)(1), states:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime, be sentenced to imprisonment for five years....

We have ruled that the imposition of the 5-year mandatory sentence under the Firearms Act in addition to the sentence for the underlying crime of violence or drug-trafficking crime does not constitute double jeopardy. In *United States v. Simpson,* we noted that "18 U.S.C. § 924(c) explicitly states that one convicted as a principle of using a firearm to commit a violent crime may be punished both for the underlying crime and for the § 924(c) charge." 979 F.2d at 1285. In *United States v. Mills,* 835 F.2d 1262 (8th Cir.1987) (per curiam), we stated that "the legislative history is clear that the Congress amended section 924(c) with the express purpose of authorizing an additional sentence to that imposed for the underlying felony." 835 F.2d at 1264. There we stated that, although before 1984, § 924(c) "did not explicitly provide that its enhancement penalties applied even if the offender was prosecuted under another statute carrying enhanced penalties for the same conduct," in 1984 Congress "amended § 924(c) to make that intention perfectly clear." *Id.* at 1286 n. 2.

Although we have not previously considered the double jeopardy status of multiple punishments under the carjacking and firearms statutes, three of our sister circuits recently have held that such multiple punishments do not constitute double jeopardy because Congress has authorized it. *United States v. Singleton,* 16 F.3d 1419, 1425 (5th Cir.1994); *United States v. Johnson,* 22 F.3d 106, 108 (6th Cir.1994); *United States v. Mohammed,* 27 F.3d 815, 819 (2d Cir.1994). We agree with the reasoning and conclusion of those cases, and there is no need to discuss the issue at any length.

The language of § 924(c)(1) shows that Congress intended to impose multiple punishments for the use or carrying of a firearm during and in relation to "any" crime of violence. Carjacking—the taking by any person who possesses a firearm, of a motor vehicle from the person or presence of anoth-

er "by force and violence or by intimidation"—is a crime of violence. *Mohammed*, 27 F.3d at 819; *Singleton*, 16 F.3d at 1423, 1426; *Johnson*, 22 F.3d at 108. Section 924(c)(1) provides that the five-year mandatory imprisonment for possessing a firearm in connection with a crime of violence shall be "in addition to the punishment provided for such crime," "including a crime of violence . . . which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon." This language shows that Congress intended to impose § 924(c)'s five-year sentence cumulatively with the punishment for a predicate violent crime, such as carjacking. *See United States v. Singleton*, 16 F.3d 1419, 1425 (5th Cir.1994).

The legislative history of § 924(c)(1) also supports that conclusion. That history is fully discussed in Judge Wisdom's scholarly opinion for the court in *Singleton*, and we need not repeat it here. That opinion also requires rejection of Tillman's argument based on the fact that the provision of § 924(c) here involved was enacted after the carjacking statute. As the court held in *Singleton:* "the order in which the statutes are enacted is irrelevant to the analysis—as long as Congress has clearly indicated an intent to impose cumulative punishments in either statute, the statutes pass constitutional muster." 16 F.3d at 1428.

## CONCLUSION

The order of the district court denying Tillman's motion for a new trial is affirmed. The order of the district court dismissing Count II on double jeopardy grounds is reversed and the case is remanded with instructions to reinstate Tillman's conviction on that count and to sentence Tillman thereunder.