**UNITED STATES of America**

v.

**Norman J. MOORE and Rodney Hewlett.**

**No. CR 93–AR–137–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

Oct. 5, 1993.

---

M. Andrew Mantler, Huntsville, AL, for Rodney Hewlett.

Jack W. Selden, Bill L. Barnett, Birmingham, AL, for U.S.

Richard A. Kempaner, Huntsville, AL, for Norman J. Moore.

### MEMORANDUM OPINION

ACKER, District Judge.

Before trial of the above-entitled case, defendants, Norman J. Moore and Rodney Hewlett, challenged the right of the United States of America to charge them in Counts Two and Four of the indictment with violations of 18 U.S.C. § 2119 and in Counts Three and Five with violations of 18 U.S.C. § 924(c)(1), by simply adopting and repeating the acts charged in Counts Two and Four as the acts upon which Counts Three and Count Five were based. This challenge was contained in pre-trial motions to dismiss Counts Three and Five. The court found the issue puzzling but denied the motions. Not unexpectedly the jury had some difficulty conceptually in dealing with Counts Three and Five, but ultimately found both defendants guilty under all counts. The court now deems defendants' earlier motions as post-conviction motions to set aside the convictions under Counts Three and Five and for judgments of

acquittal under those counts. The court must rule before sentencing so that the probation officer can prepare pre-sentence reports which accurately reflect the procedural facts.

This is the first so-called "carjacking" case tried in the Northern District of Alabama. The Anti–Car Theft Act of 1992, 18 U.S.C. § 2119, did not become effective until October 25, 1992. Congress there made it abundantly clear that it wanted to impose a new and serious federal penalty on any person who uses a gun to seize a motor vehicle from another person where, as is always the case, the motor vehicle is, or has been, connected in some way with interstate commerce. This court has no doubt that the grand jury and the petit jury in this case had ample evidence upon which to find that Moore and Hewlett seized from two separate drivers two separate vehicles at gunpoint on consecutive days, just as charged in Counts Two and Four. Therefore, the convictions of Moore and Hewlett under § 2119 on Counts Two and Four are, in this court's opinion, invulnerable to post-conviction attack. Fortunately for all involved, neither of the driver-victims was killed during the carjackings so that defendants have avoided the possibility of life imprisonment which is called for under § 2119(3) "if death results."

The problem in this case arises from the charges and convictions under § 924(c)(1), a statute providing that if any person "during and in relation to any crime of violence ... uses or carries a firearm, [such person] shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years...." The "carjacking" statute clearly describes and proscribes a "crime of violence." The essential elements of the crime created by § 924(c)(1), as averred by the United States using the statutory language in Counts Three and Five, the so-called "gun" counts, are, as this court sees it, the same as the essential elements of the § 2119 crime being charged in the "carjacking" counts. There may be a minuscule or hypertechnical distinction between "possessing" a firearm as proscribed by § 2119 and "using" or "carrying" a firearm as proscribed by

§ 924(c)(1). In this court's view, the *sine qua non* for the § 924(c)(1) violation is the same as the *sine qua non* for the § 2119 violation. Hypothetically, if one of these two criminal statutes had been drafted so as to contain as an extra essential element the actual *discharge* of the gun, a sufficiently different element would appear to create a separate crime upon which separate or additional punishment could logically and constitutionally be based, but in this case Count Three reads just like Count Two except that Count Three repeats the fact of the presence of a gun, using the following language which reads rather like "second verse, just like the first":

> ... while possessing a firearm, as charged in Count Two, of this indictment, did knowingly use and carry a firearm.

This language is the functional equivalent of the following redundant anomaly:

> He held up the driver of the car at gunpoint and, incidentally, carried a gun while doing it.

It might be possible, in theory at least, for a person to have constructive "possession" of a gun and not "carry" it or "use" it; however, a person could not possess a gun and take a vehicle "from [a] person or presence of another by *force* and *violence* or by *intimidation*" (the words of § 2119) without either "using" or "carrying" the said gun. It is the "using" or "carrying" of the "possessed" gun that provides the intimidating force, whether the gun is actually displayed or not. Thus, in all honesty, the essential elements of the crime under § 924(c)(1) are identical to those in § 2119.

■ This court can understand why Congress would wish to impose a stiff sentence upon a person who commits a violent felony while in possession of a gun, but this court gives Congress credit for realizing in 1992 when it enacted its new carjacking statute that it was subsuming § 924(c)(1) with § 2119 and did not intend to skate through the thin ice laid down in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Supreme Court said that where "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. This court finds that Counts Three and Five, each of which invokes § 924(c)(1), violate the *Blockburger* test because Congress meant for § 2119 to replace § 924(c)(1) in the narrow context of a carjacking with a gun, and that the United States in obtaining this overloaded indictment simply misread Congress. Necessarily assuming that Congress was aware of *Blockburger* when it enacted § 2119, this court must presume that Congress wanted a passing grade on constitutional law and the Fifth Amendment, including the double jeopardy clause. The presumption of constitutionality is not an unimportant rule of statutory construction. Although this presumption of Congressional learning might be undercut by an empirical study of Congressional enactments, it is enhanced in this case by the rule of lenity, because § 2119 is, after all, a *criminal* statute.

If § 924(c)(1) had been enacted *after* § 2119, instead of *vice versa*, there might be an argument that Congress intended to punish the same conduct twice. However, this court is as unwilling to conclude that Congress intended in 1992 to do in a convoluted and strained way what it could so easily have accomplished by the use of plain English as it is to doubt Congressional constitutional understanding.

Last but not least, if this court should subscribe to the argument here made by the Government, a person convicted under § 2119(3) could get life imprisonment followed by a term of five years. Under the pre-guideline regime, life imprisonment did not mean life imprisonment, and there might have been a reason for providing a mandatory consecutive custodial sentence beyond life imprisonment. This was not true, however, in 1992 when § 2119 was enacted. The law would be the proverbial "ass" if Congress had intended such an anomaly. Congress simply must not have intended to allow the stacking of a "gun" count on a "carjacking" "gun" count.

338

This court has found only two decided cases in which the question here under consideration has been addressed. The first is *United States v. Singleton*, 824 F.Supp. 609 (E.D.La.1993), by Judge Duplantier. The second is *United States v. McHenry*, 830 F.Supp. 1025, 1993 WL 326312 (N.D.Oh. 1993), by Judge Dowd. Using somewhat differing rationales, both judges agree that Congress did not intend to punish identical conduct twice under § 2119 and § 924(c)(1). This court need not choose one judge's rationale over the other. They both reach a fair and reasonable result and reflect a Congressional intent that makes sense.