**UNITED STATES, Plaintiff,**

v.

**Edward STOKES, Defendant.**

**Cr. A. No. 93–552 (ALJ).**

United States District Court,
D. New Jersey.

July 7, 1994.

Amy Winkelman, Asst. U.S. Atty., U.S. Attorney's Office, Newark, NJ, for the U.S.

Michael J. Sullivan, Asst. Federal Public Defender, Trenton, ·NJ, for defendant.

## OPINION

LECHNER, District Judge.

On 10 November 1993, Edward Stokes ("Stokes") was indicted by a Federal grand jury on three counts of a four-count indictment (the "Indictment"). Count one of the Indictment ("Count One") charged Stokes with carjacking—taking a motor vehicle from another person by force, intimidation and violence while possessing firearms—in violation of 18 U.S.C. § 2119. Count two of the indictment ("Count Two") charged Stokes with using and carrying firearms in connection with a crime of violence, namely the carjacking charged in Count One, in violation of 18 U.S.C. § 924(c). Count three of the Indictment ("Count Three") charged Stokes with possession of firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). A jury convicted Stokes on all three counts.

This opinion, which addresses Stokes' objection regarding sentencing for those charges, is rendered pursuant to the Rule 8(4) of the Rules of the United States Court of Appeals for the Third Circuit.[1] At sentencing, Stokes argued that consecutive sentences for Count One and Count Two imposed multiple punishment for the same underlying offense and, therefore, violated the Double Jeopardy Clause of the United States Constitution, U.S. Const. amend. V (the "Double Jeopardy Clause"). Stokes' argument was rejected.

*Facts*

On 22 July 1993, in East Orange, New Jersey, Stokes, armed with a revolver, and his co-defendant, Kevin Bishop ("Bishop"),

---

1. In connection with his sentencing objection, Stokes submitted: Memorandum of Law in Support of Defendant's Double Jeopardy Objections to Multiple Punishments Under the Statutes at Issue (the "Stokes Brief").

In response to Stokes' objection, the Government submitted: Brief of the United States in Opposition to Defendant Edward Stokes' Motion Challenging the Imposition of Consecutive Punishments Pursuant to Title 18, United States Code, Sections 924(c) and 2119 (the "Government Brief"), attaching Exhibits A through G.

approached a man and woman who were exiting from a 1993 Dodge Shadow. Pre-Sentence Report, issued on 18 March 1994 and revised on 26 May 1994 (the "Pre-Sentence Report"), at 4. Stokes took the revolver from beneath his shirt and placed it to the man's head while Bishop grabbed the woman from behind and placed his hand over her mouth. *Id.* While holding the revolver to the man's head, Stokes demanded the keys to the car. *Id.* The man surrendered the car keys, and Stokes and Bishop drove away.

The victims immediately called the East Orange police and reported the carjacking. *Id.* The police responded to the scene of the carjacking where the victims provided the police with a description of Stokes and Bishop. *Id.* The description was transmitted over the police radio and Stokes and Bishop were soon observed in the stolen vehicle travelling toward Newark, New Jersey. *Id.* The police began following the vehicle and Stokes, who was driving the stolen car, attempted to elude the police. *Id.* At this point, the police gave chase. *Id.* Eventually, the stolen vehicle struck another vehicle, Stokes lost control and the car crashed onto the sidewalk, hit the side of a liquor store and came to a stop. *Id.* Stokes then jumped out of the driver's side window and attempted to flee on foot. *Id.* Bishop jumped out of the passenger side of the car and also fled on foot. A later search of the stolen vehicle revealed two loaded handguns, one of which had been reported stolen. *Id.*

Stokes was apprehended by the police after a brief foot chase. *Id.* at 5. He was then taken to the East Orange police station where he was positively identified by the victims of the carjacking. *Id.* Bishop was not apprehended until approximately two months later when he was arrested in another state pursuant to a warrant for an unrelated murder charge.

After indictment, Stokes filed pre-trial motions to dismiss Count One and Count Two of the Indictment.[2] Stokes argued that Count One, the carjacking charge, was not a valid exercise of congressional power to regulate interstate commerce. As to Count Two, Stokes argued that 18 U.S.C. § 924(c), which imposes mandatory consecutive punishment for the use of a firearm in a violent crime—carjacking in the instant case—violates the Double Jeopardy Clause. Judge Brown rejected both arguments and denied the motions to dismiss. *See* Transcript of Proceedings, dated 3 January 1994. The motion to dismiss Count Two, however, was dismissed without prejudice; Stokes was advised he could renew his argument at the time of his sentencing.

On 16 February 1994, a jury found Stokes guilty of carjacking and of using and carrying firearms during and in relation to a crime of violence. On 18 February 1994, the same jury found Stokes guilty of possessing a firearm as a convicted felon.

After Stokes was convicted, the Pre-Sentence Report calculated an offense level of 29 for Count One and Count Three,[3] and a

---

**2.** The motions were made before the Honorable Garrett E. Brown, Jr., to whom the case was originally assigned. On 31 January 1994, the case was re-assigned to this court.

**3.** *Count One*—Carjacking

| | |
|---|---|
| Base Offense Level—for violation of 18 U.S.C. § 2119, pursuant to U.S.S.G. § 2B3.1 | 20 |
| Specific Offense Characteristic—for monetary loss exceeding $10,000, pursuant to U.S.S.G. § 2B3.1(b)(6)(B) | + 1 |
| Adjustment for Obstruction of Justice—for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2 | + 2 |
| Adjusted Offense Level (Subtotal) | 23 |

*Count Three*—Possession of a Firearm by a Felon

| | |
|---|---|
| Base Offense Level—for violation of 18 U.S.C. § 922(g)(1), pursuant to U.S.S.G. § 2K2.1(a)(2) | 24 |
| Specific Offense Characteristic—for possessing a stolen firearm, pursuant to U.S.S.G. § 2K2.1(b)(4) | + 2 |
| Adjusted Offense Level (Subtotal) | 26 |
| Multiple Count Adjustment, pursuant to U.S.S.G. § 3D1.4 | |
| —Adjusted Offense Level for Count One | 23 |
| —Adjusted Offense Level for Count Three | 26 |
| (Greater Adjusted Offense Level) | |
| —Total Number of Units (1 for Count One and 1 for Count Three) | + 2 |
| —Greater Adjusted Offense Level | 26 |
| Combined Offense Level | 28 |
| Chapter Four Enhancement—for being a career criminal, offense level calculated under U.S.S.G. § 4B1.1(D) | 29 |

criminal history category of VI because Stokes was determined to be a career criminal. Under the Guidelines, there is no offense level provided for Count Two. Rather, once a defendant is convicted of a violation of 18 U.S.C. § 924(c), the statute requires that a five-year term of imprisonment be imposed. *See* 18 U.S.C. § 924(c); U.S.S.G. § 2K2.4(a). The statutorily required term of imprisonment is to run consecutively to the sentence for any other offenses.

For an offense level of twenty-nine with a criminal history category of VI, the Guidelines provide a sentencing range of 151 to 188 months. As a result of the conviction on Count Two, section 2K2.4(a) requires that sixty months be added to that range, culminating a range of 211 to 248 months. U.S.S.G. § 2K2.4(a).

On 23 June 1994, Stokes was sentenced to 248 months imprisonment; 180 months on Count One, sixty months on Count Two and eight months on Count Three, all terms to run consecutively. *See* Transcript of Proceedings, dated 23 June 1994 (the "Sentencing Hrg. Tr."). Stokes was also sentenced to concurrent three-year terms of supervised release on each count and was fined $5,000. *Id.* A special assessment of $50 per count was imposed. *Id.*

On 24 June 1994, Stokes filed a Notice of Appeal, appealing from the judgment entered on 23 June 1994, which adopted the factual findings and guideline applications in the Pre–Sentence Report.

### Discussion

At the sentencing hearing, Stokes did not object to the calculated offense level or criminal history category in the Pre–Sentence Report.[4] He did, however, renew his pre-trial objection to the five-year consecutive term of imprisonment imposed pursuant to section 924(c). Stokes argued the imposition of the mandatory five-year enhancement to his carjacking offense constitutes multiple punish-

ment in violation of the Double Jeopardy Clause. *See* Stokes Brief.

■ The Fifth Amendment of the Constitution provides, in pertinent part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy for life or limb." U.S. Const. amend. V. The guarantee against double jeopardy affords three different types of protection: (1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution after conviction and (3) it protects against multiple punishments for the same offense. *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275 (1981); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). Stokes' objection was based upon the prohibition of multiple punishments for the same offense.

■ The primary method for determining whether two statutes proscribe the same offense is the test articulated by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In that case, the Court devised a rule of statutory construction to aid in determining whether violations of two distinct statutory provisions are "the same offense" for Double Jeopardy purposes.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182; *see United States v. Woodward,* 469 U.S. 105, 107, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985).

In *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Court placed the following qualification on the *Blockburger* test:

> The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two stat-

---

4. In fact, Stokes' counsel acknowledged that Stokes was a career criminal under the guide-

lines. *See* Sentencing Hrg. Tr.

utory provisions proscribe the "same offense," they are construed not to authorize cumulative punishment in the absence of a clear indication of contrary legislative intent.

*Id.* at 691–92, 100 S.Ct. at 1437–38.

■ A year later in *Albernaz,* the Court further qualified the use of the *Blockburger* test, stating: "The *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz,* 450 U.S. at 340, 101 S.Ct. at 1143. In fact, as the Court stated in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983),

> simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent.... Legislatures, not courts, prescribe the scope of punishments.
>
> Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368–69, 103 S.Ct. at 679; *see Government of Virgin Islands v. Soto,* 718 F.2d 72, 77 (3d Cir.1983) (the ultimate question is one of legislative intent). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter,* 459 U.S. at 366, 103 S.Ct. at 678.

**A. *Applying the Blockburger Test***

The first step to be taken in the instant case is to apply the *Blockburger* test to the two statutes at issue—section 2119 and section 924(c)—to determine whether they proscribe the same offense.

Section 2119 provides in pertinent part: Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

18 U.S.C. § 2119.

Accordingly, section 2119 requires proof of the following facts: (1) possession of a firearm, (2) taking or attempting to take, (3) a motor vehicle, (4) that has been transported, shipped or received in interstate or foreign commerce, (5) from the person or presence of another, (6) by force and violence or by intimidation.

Section 924(c) provides, in pertinent part: Whoever, during and in relation to any crime of violence ... (including a crime of violence ... which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment imposed for the crime of

violence ... in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

. . . . .

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(1) and (3).

Section 924(c), accordingly, requires proof of the following facts: (1) using or carrying a firearm (2) during and in relation to (3) a crime of violence.

The Government argues in the instant case that there are distinct issues of proof for each statute.

> Section 2119 requires proof of a fact that Section 924(c) does not; it requires the taking of a motor vehicle. Section 924(c) also requires proof of a fact that Section 2119 does not; it requires that a firearm be used and carried "during and in relation to" the underlying crime of violence, while Section 2119 is satisfied through the mere possession of a firearm during a carjacking.

Government Brief at 5 (footnote and citations omitted). In support of its argument, the Government cites to the district court decisions in *United States v. Payne*, 841 F.Supp. 810, 814 (S.D.Ohio 1994); *United States v. McHenry*, 830 F.Supp. 1020, 1022 (N.D.Ohio 1993), *appeal dismissed*, 993 F.2d 1548 (6th Cir.1993); *United States v. Zukinta*, 830 F.Supp. 418, 421 (E.D.Tenn.1993).[5]

■ The Government's first contention— that section 2119 requires the taking of a motor vehicle while section 924(c) does not—

is incorrect. As explained by the court in *United States v. Harwood*, 834 F.Supp. 950 (W.D.Ky.1993), *aff'd mem.*, 25 F.3d 1051 (6th Cir.1994): "The underlying crime of violence ... upon which a section 924(c) conviction is, by definition, based will never require proof of any fact for which section 924(c) itself does not require proof." *Id.* at 952 (quoting *United States v. Gibbons*, 994 F.2d 299, 302 (6th Cir.) (applying section 924(c) to drug trafficking offense), *cert. denied*, —— U.S. ——, 114 S.Ct. 202, 126 L.Ed.2d 160 (1993)). The elements of the underlying crime of violence are necessarily subsumed by section 924(c) which itself requires proof of the underlying crime.

■ The Government's second contention—that there is a distinction between "possessing" a firearm for purposes of section 2119 and "using and carrying" a firearm for purposes of section 924(c)—has been rejected by the only two circuit courts to address the issue. *See United States v. Singleton*, 16 F.3d 1419 (5th Cir.1994); *Johnson*, 22 F.3d at 108.

In *Singleton*, the Fifth Circuit stated: "Every defendant who violates [section] 2119 necessarily violates [section] 924(c)." 16 F.3d at 1423. The court expressly rejected the argument posed by the Government that a conviction under section 2119 could rest on the "mere possession" of a firearm and provided the following example:

> [A] would-be carjacker, carrying only a dagger and an empty knapsack, demands that the victim, at knifepoint, surrender his car. While the victim is complying, a passerby casually drops a firearm into the carjacker's open knapsack, without the carjacker noticing. Unquestionably the carjacker had "mere possession" of a firearm during the offense. But can that admittedly unlikely scenario be what Congress meant to punish when it condemned the evils of "armed carjacking"? We think not. The firearm is central to the crime of carjacking. Too tenuous a connection between the firearm and the taking of the

---

5. Although none of the three cases has been reversed, all three district courts lie within the Sixth Circuit which subsequently held that "section 924(c) includes or overlaps the conduct proscribed in s[ection] 2119" and the two sections cannot satisfy the *Blockburger* test. *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir.1994).

vehicle removes the defendant's conduct from the range proscribed by [section] 2119. "Mere" possession of the firearm is insufficient; some relation between the firearm and the taking of the vehicle is required.

*Id.* at 1424. The *Singleton* court, therefore, concluded: "[P]roof of a violation of [section] 2119 always proves a violation of [section] 924(c), and the two statutes fail the *Blockburger* 'same elements' test." *Id.* at 1425; *see Johnson*, 22 F.3d at 108.

Most district courts which have applied the *Blockburger* test to sections 924(c) and 2119 have come to a conclusion similar to those in *Singleton* and *Johnson. See United States v. Hernandez,* 849 F.Supp. 150, 154 (D.P.R. 1994) ("a violation of the carjacking statute is also a violation of the firearm statute and ... the statutes fail the *Blockburger* test"); *United States v. Hill,* 853 F.Supp. 1154, 1157 (N.D.Cal.1994) ("The court can see no meaningful distinction between possessing a firearm and using force and violence or intimidation in the commission of a carjacking on the one hand, and using or carrying a firearm during and in relation to a crime of violence."); *United States v. Ferguson,* 847 F.Supp. 940, 941 (S.D.Ala.1994) ("the elements of [sections] 924(c) and 2119 are coextensive"); *United States v. Sabini,* 842 F.Supp. 1448, 1451 (S.D.Fla.1994) ("neither section 924(c) nor section 2119 requires proof of a fact not required by the other"); *United States v. Moore,* 832 F.Supp. 335, 336–67 (N.D.Ala.1993) ("There may be a minuscule or hypertechnical distinction between 'possessing' a firearm as proscribed by [section] 2119 and 'using' or 'carrying' a firearm as proscribed by [section] 924(c) ... [but] the *sine qua non* for the [section] 924(c) violation is the same as the *sine qua non* for the [section] 2119 violation."); *United States v. Smith,* 831 F.Supp. 549, 551 (E.D.Va.1993) ("[n]o element of [section 924(c) ] is not also an element of the 'carjacking' statute").

At least one court, however, has declined to make the determination under the *Blockburger* test and, instead, has moved directly to an analysis of congressional intent, explaining: "[T]he dispositive inquiry is whether Congress intended cumulative punish-

ments." *United States v. Ford,* 844 F.Supp. 1092, 1094 (D.Md.1994); *cf. United States v. Lanzi,* 933 F.2d 824, 826 (10th Cir.1991) (court need not apply *Blockburger* test to armed robbery and firearms offenses because court found "Congress expressly authorized multiple punishment"); *United States v. Powell,* 894 F.2d 895, 900 (7th Cir.) (court declined to apply *Blockburger* test to conspiracy and firearms offenses because it found "Congress specifically authorized cumulative punishment"), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990); *United States v. Hatheway,* 791 F.Supp. 1110, 1113–14 (E.D.La.1992) (court need not decide whether sections 924(c) and 841(a)(1) (cocaine trafficking) constituted same offense under *Blockburger* because Congress had clearly authorized cumulative punishment), *aff'd mem.,* 995 F.2d 221 (5th Cir.1993).

■ The Third Circuit has not addressed this issue. Assuming section 924(c) and section 2119 do proscribe the same offense, as discussed below, it is clear Congress intended multiple punishments for the offense of carjacking. Thus, a determination under the *Blockburger* test is not controlling.

### B. *Determining Congressional Intent*

■ Section 924(c) is an enhancing statute which has as its single purpose imposing more severe penalties where firearms actually or potentially facilitated the commission of any Federal crime of violence. By its terms, the penalties imposed pursuant to section 924(c) are "in addition to the punishment provided" for the underlying violent crime. 18 U.S.C. § 924(c). Thus, the plain language of section 924(c) evinces congressional intent to impose an enhanced punishment for crimes of violence in which a firearm is used. *See United States v. Martin,* 961 F.2d 161, 163–64 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 271, 121 L.Ed.2d 200 (1992); *Lanzi,* 933 F.2d at 826; *United States v. Moore,* 917 F.2d 215, 229–30 (6th Cir.1990), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1590, 113 L.Ed.2d 654 (1991); *United States v. Holloway,* 905 F.2d 893, 894–95 (5th Cir.1990).

Reinforcing the interpretation that Congress intended enhanced punishment for the use of a firearm in a broad category of

violent crimes is the revision of section 924(c) in 1984. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 1005(a), 98 Stat. 2138–2139. Congress revised section 924(c), in part, by specifically making the provision applicable to "crime[s] of violence ... which provide[ ] for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device."

Section 924(c) was revised in response to two Supreme Court cases which narrowed its application, prohibiting the enhancement where the underlying violent crime imposed its own sentencing enhancement for the use of a firearm—*Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) and *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). In the legislative history of the statute's revision, it was stated:

> [T]he Supreme Court's decisions in *Simpson v. United States* and *Busic v. United States* have negated [the use of section 924] in cases involving statutes, such as the bank robbery statute, which have their own enhanced, but not mandatory, punishment provisions in situations where the offense is committed with a dangerous weapon. These are precisely the type of extremely dangerous offenses for which a mandatory punishment for the use of a firearm is the most appropriate.
>
> . . . . .
>
> The Committee has concluded that subsection 924(c) should be completely revised to ensure that all persons who commit Federal crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.

Senate Judiciary Report, S.Rep. No. 225, 98th Cong., 2d Sess. 3312–313 ("Senate Judiciary Report"), *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3490–91.

■ From the text of section 924(c) and its legislative history, it is clear Congress intended enhanced punishment for the use of a handgun during the commission of violent crimes which were in existence at the time section 924(c) was enacted and revised. The remaining question in the instant case is whether the broad language in section 924(c) is prospective.

The text of section 2119 does not expressly mention 924(c) or an intent on the part of Congress to apply the enhancement provision in 924(c) to carjacking. However, as the offense is described in section 2119, "[c]arjacking is always and without exception a 'crime of violence' as that term is defined in 18 U.S.C. § 924(c)(3)." *Singleton,* 16 F.3d at 1423.

Carjacking is described as taking a motor vehicle "by force and violence, or by intimidation" while possessing a firearm. 18 U.S.C. § 2119. Section 924(c), which does not provide a fixed list of violent crimes, sets forth the following general definition of a "crime of violence": "[A] felony [which] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or ... that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c). It is indisputable that carjacking falls within that definition.

■ When Congress enacts a statute in general terms, it is assumed the statute will apply prospectively to persons and subjects falling within its terms. Where, as in the instant case, "Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislature." *Barr v. United States,* 324 U.S. 83, 90, 65 S.Ct. 522, 525, 89 L.Ed. 765 (1945); *see Smith v. Pan Air Corp.,* 684 F.2d 1102, 1113 (5th Cir.1982) ("statutes are not confined in application to contemporaneous instances and ... their principles are to be extended to embrace new factual situations"); *Cain v. Bowlby,* 114 F.2d 519, 522 (10th Cir.1940) ("[I]t is a general rule in the construction of statutes that

legislative enactments in general and comprehensive terms and prospective in operation, apply to persons, subjects and business within their general purview and scope, though coming into existence after their passage, where the language fairly includes them.") (citing *Newman v. Arthur*, 109 U.S. 132, 3 S.Ct. 88, 27 L.Ed. 883 (1883)).

▆ When Congress enacts a new statute, moreover, it is presumed to be aware of previous statutes relating to the same subject matter and the basic rules of statutory construction. *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.Ed.2d 1005 (1991); *see Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325–26, 112 L.Ed.2d 275 (1990); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988); *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979). This same presumption applies equally to criminal statutes. *See Albernaz*, 450 U.S. at 341–42, 101 S.Ct. at 1143–44.

▆ Turning to the case at bar, when Congress enacted section 2119, section 924(c) was on the books. Congress is presumed to have known of the existence and scope of section 924(c), which unambiguously provides for the enhancement of all Federal crimes of violence in which a firearm is used. Clearly, Congress was aware that the new carjacking offense fell squarely within the definition of a violent crime in section 924(c).

The fact Congress made no specific reference to section 924(c) in the text or legislative history of section 2119 is not significant. "Congress cannot be expected to specifically address each issue of statutory construction which may arise." *Albernaz*, 450 U.S. at 340–41, 101 S.Ct. at 1143. As the court explained in *Singleton*:

Congress may make a plain statement of its intent to stack punishments in a specified class of crimes as it did in [section] 924(c). Once Congress does that, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class. ... [O]nce Congress has stated a general intention to impose cumulative punishments in [section] 924(c) it need not do so again in [section] 2119.

. . . . .

We ... hold that the order in which the statutes are enacted is irrelevant to the analysis—as long as Congress has clearly indicated an intent to impose cumulative punishments in either statute, the statutes pass constitutional muster.

16 F.3d at 1427–28; *see Johnson*, 22 F.3d at 108. The *Singleton* court, therefore, was "satisfied ... that Congress ha[d] made a sufficiently clear indication of its intent to impose cumulative punishments for violations of [section] 924(c) and all crimes of violence, including 'carjacking,' to satisfy the requirements of the Double Jeopardy Clause." *Singleton*, 16 F.3d at 1429; *see Johnson*, 22 F.3d at 108; *United States v. Portillo*, 18 F.3d 290, 291–92, *reh'g denied en banc*, 21 F.3d 1110 (5th Cir.1994).

District court opinions addressing the issue, however, appear to be split as to whether section 924(c) may be applied to carjacking offenses. *Compare Hernandez*, 849 F.Supp. at 152–54 (no violation of Double Jeopardy Clause); *Ford*, 844 F.Supp. at 1094–97 (same); *McHenry*, 830 F.Supp. 1020 (same); *Harwood*, 834 F.Supp. 950; *Zukinta*, 830 F.Supp. 418 (same); *with Ferguson*, 847 F.Supp. 940 (violation of Double Jeopardy Clause); *Smith*, 831 F.Supp. 549 (same); *Moore*, 832 F.Supp. 335 (same).

▆ Although the Third Circuit has not yet addressed this question,[6] the only circuit

---

**6.** The Government asserts: "Although the Third Circuit has not expressly ruled on whether Congress intended to impose cumulative punishments for violations of Sections 2119 and 924(c), it recently upheld a district court's imposition of consecutive sentences for violations of these statutes." Government Brief at 18. The Government cites the case of *United States v. Ludiver*, Criminal No. 93–19 (DRD). *See* Exhibits B through D to the Government Brief.

In that case, the defendants pleaded guilty, *inter alia*, to charges of carjacking and the use of firearms during a crime of violence. The court sentenced the defendants to consecutive terms of imprisonment for those charges. The defendants appealed, and one of the contentions raised on appeal was: "Whether a consecutive sentence for the use of a firearm under 18 U.S.C. § 924(c) violates the double jeopardy clause of the U[nit-

courts which have addressed the issue, have uniformly held that Congress clearly intended to impose multiple punishments for violations of section 2119. *See Portillo,* 18 F.3d at 291–92; *Singleton,* 16 F.3d at 1229; *Johnson,* 22 F.3d at 108.

 It further appears the circuit court decisions present the better reasoned approach to the issue. Each of the three district court cases which found a violation of the Double Jeopardy Clause emphasized the fact that section 2119 is silent on the issue of cumulative punishment and interpreted that silence as ambiguity. *See Ferguson,* 847 F.Supp. at 941; *Moore,* 832 F.Supp. at 337–38; *Smith,* 831 F.Supp. at 551.

As discussed, there is no basis for finding section 2119 ambiguous. It clearly proscribes a violent crime which involves a firearm; thus it falls within the definition of section 924(c)(3). As further discussed, the absence of any reference in section 2119 to section 924(c) should not be construed as creating any ambiguity; such a reading is contrary to the principles of statutory construction. *See Albernaz,* 450 U.S. at 340–41, 101 S.Ct. at 1142–43; *Singleton,* 16 F.3d at 1429; *Johnson,* 22 F.3d at 108.

In addition to finding section 2119 ambiguous, the *Smith* court also determined section 924(c) should not apply to carjacking offenses because section 2119 requires, as one of its elements, the possession of a firearm. 831 F.Supp. at 531. The court reasoned: "It would be unusual under the language of the carjacking statute to sentence a defendant for carjacking, then to impose a separate

sentence on the defendant for committing an element of that carjacking offense (using a firearm)." *Id.*

This reasoning was rejected by the Fifth Circuit in *Singleton* which found it inconsistent with the legislative history of section 924(c).

> In 1981, Congress considered and rejected an amendment to [section] 924(c) that would have excluded from its reach those statutes, like [section] 2119, in which use or possession of a deadly weapon was already an element of the predicate offense.[7]

16 F.3d at 1427 n. 41 (footnote added). The *Singleton* court interpreted the rejection of the proposed amendment as "suggesting that Congress intended [section] 924(c) to apply even when use of a deadly weapon was already an element of the predicate offense." *Id.*

Because the reasoning used in *Ferguson, Smith* and *Moore* fails to comply with the principles of statutory construction and is inconsistent with the language and legislative history of section 924(c), it is unpersuasive.

Congress has made clear its intent to apply the mandatory enhancement provision of section 924(c) to all Federal violent crimes in which a firearm is used. Congress has specifically expressed this intent in the language of section 924(c). *See* 18 U.S.C. 924(c). It made a clarifying revision to the statute in 1984 in response to judicial interpretations which narrowed the statute's application. *See* Senate Judiciary Report. In addition, Congress has rejected at least one proposed

---

ed] S[tates] Constitution when such use is an essential element of a carjacking conviction." Judgment Order of the United States Court of Appeals for the Third Circuit, dated 1 April 1994, attached as Exhibit E to the Government Brief, at 2.

The Circuit affirmed the conviction without opinion but expressly noted as to the double jeopardy argument: "The court concludes that this issue is not properly before it in this appeal and expresses no opinion with respect to the merits of appellants' arguments on that issue." *Id.* at 2 n. 1.

7. The following describes the effect of the proposed revision which was rejected by Congress: "[T]he purpose of th[e proposed revision] ... is to create a separate basis of criminal liability

for the possession or employment of any firearm, destructive device, or dangerous weapon in the commission of a crime because of the potential danger posed to human life by such conduct.... Where, however, the nature of the offense itself involves using or possessing a weapon, the factor of potential danger to life has already been taken into account, and there is no reason to permit the pyramiding of offenses and punishment through application of this section. Accordingly, the Committee does not intend that this section be construed to apply where the underlying offense is one involving the use or possession of a weapon of the type here covered...."

*Singleton,* 16 F.3d at 1427 n. 41 (quoting S.Rep. No. 307, 97th Cong., 1st Sess. 890).

445

amendment which would have limited the application of section 924(c). *See Singleton,* 16 F.3d at 1427 n. 41.

There is no reason to presume congressional intent has changed simply because Congress passed a new law proscribing an additional violent crime. *Cf. Soto,* 718 F.2d at 78 (despite legislature's revisions to robbery statute, court found "no basis to assume legislature modified its prior determination that section 2251(a)(2)(B) [weapon enhancement statute] applied to all robberies").

Because it is clear Congress intended to impose enhanced punishment for carjacking offenses committed with a firearm, the imposition of a five-year consecutive sentence in Stokes' case does not violate the Double Jeopardy Clause. "If the legislature, as expressed in the language of the statute or its legislative history, clearly intended cumulative punishment under two different statutory provisions, the imposition of multiple punishment does not violate the Double Jeopardy Clause and the court's inquiry is at an end." *Lanzi,* 933 F.2d at 825; *see Hunter,* 459 U.S. at 368–69, 103 S.Ct. at 679.

*Conclusion*

For the foregoing reasons, Stokes' constitutional challenge to the imposition of a five-year consecutive sentence, pursuant to 18 U.S.C. § 924(c), is rejected.